IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

U.S. BANK NATIONAL ASSOCIATION,  )
                                     )
         Plaintiff,            )  Civil Action No. 7:23-cv-00471
                                     )
v.                                )  **MEMORANDUM OPINION**
                                   )
B. S. CARRIERS, LLC,           )  By:   Hon. Thomas T. Cullen
                                   )         United States District Judge
         Defendant.       )

Plaintiff U.S. Bank National Association d/b/a U.S. Bank Equipment Finance ("U.S. Bank") brought this action against Defendant B.S. Carriers, LLC ("Carriers") for Carriers's alleged breach of an equipment finance agreement (the "Agreement"). Carriers failed to appear in this matter or otherwise respond to U.S. Bank's claims. Accordingly, U.S. Bank moved for entry of default, which the clerk granted. The matter is now before the court on U.S. Bank's motion for default judgment. For the reasons discussed below, the court will grant that motion.

## I.    BACKGROUND

On April 15, 2022, the parties entered into the Agreement under which U.S. Bank agreed to finance Carriers's purchase of a 2017 Freightliner Cascadia Sleeper Truck (the "Equipment"). (Agreement at 1 [ECF No. 1-1].) In exchange, Carriers agreed to pay U.S. Bank $1,605.38 per month for 60 months; it further agreed to a 10% late fee for any payment that was more than five days late. (*Id.*) U.S. Bank also received a security interest in the Equipment as collateral and the right to exercise certain remedies in the event of a default by Carriers, including for failure to pay. (*Id.* ¶¶ 3, 6.) Specifically, upon default, U.S. Bank could require

Carriers to immediately pay all future amounts that it owed under the Agreement, discounted at a 2% rate. (*Id.* ¶ 6.) It would also be entitled to recover from Carriers: (1) interest on any unpaid amount at the rate of 12% per year; (2) the Equipment and any repossession costs, minus any proceeds from the Equipment's sale; and (3) attorneys' fees and costs. (*Id.*)

At the outset of the Agreement, Carriers upheld its end of the bargain, paying U.S. Bank the first eight monthly installments, plus one late fee. (Detailed Pay History at 2–3 [ECF No. 11-3].) But then Carriers stopped performing; it did not pay the 10% fee for its late December 2022 payment and failed to make any payment to U.S. Bank thereafter. (*Id.* at 1; Suppl. Decl. Damages ¶ 13 [ECF No. 11-1].) Despite this non-payment, U.S. Bank did not initially declare Carriers in default and accelerate its future payments. Instead, it recorded missed payments and accompanying late charges for the amounts due from January–May 2023, which resulted in Carriers owing a total past-due amount of $8,990.14: $8,026.90 in missed monthly payments and $963.24 in late fees. (Suppl. Decl. Damages ¶ 23; Detailed Pay History at 1–2.) Subsequently, however, U.S. Bank decided to enforce its default rights and demanded that Carriers immediately pay it the 47 payments due from June 2023 through the end of the Agreement, discounted at a 2% rate—*i.e.*, $72,515.22. (Suppl. Decl. Damages ¶¶ 17–18, 23.) Carriers has not paid any of that amount or the past-due amount. (*Id.* ¶ 18.)

U.S. Bank sued Carriers in this court on July 31, 2023. The complaint asserts claims for breach of contract and detinue and requests $81,505.36 in damages, plus prejudgment and post-judgment interest, costs, and attorneys' fees. (Compl. at 3–4.) Carriers was served on August 4, 2023 (*see* ECF No. 4), and its responsive pleading was due by August 25, 2023, Fed.

R. Civ. P. 12(a)(1)(A)(i). It did not file a responsive pleading by that date and still has not responded to the complaint in any manner.

On October 30, 2023, U.S. Bank informed the court that it had recovered the Equipment from Carriers and would sell it for scrap value. (ECF No. 6.) According to U.S. Bank, it also attempted to resolve the matter out of court, but Carriers's representative stated that the entity was "out of business" before ceasing communications. (*Id.*) U.S. Bank then moved for entry of default, which the clerk granted. (ECF Nos. 7–8.)

Approximately one month later, U.S. Bank filed the instant motion for default judgment against Carriers as to its breach of contract claim. (Mot. Default J. at 1–2 [ECF No. 9].) In that motion, U.S. Bank requested that the court grant it $77,755.36 in damages.[1] (*Id.* at 3.) U.S. Bank also asked for prejudgment interest in the amount of $25.56 per day—which is the daily interest that accrues on the $77,755.36 in damages based on a simple interest rate of 12% per year—from July 19, 2023, and attorneys' fees and costs of $27,557.98. (*Id.*)

The default-judgment motion, however, did not provide the court with sufficient information to independently substantiate the claimed damages, fees, and costs. Therefore, the court ordered U.S. Bank to submit supplemental evidence, consisting of authentic and otherwise admissible business records, that contained enough detail for the court to verify the appropriate judgment amount in this matter. (ECF No. 10.) The court also reminded Carriers

---

[1] This amount equals the sum of Carriers's past-due payments from January–May 2023 ($8,026.90), plus the late fees from December 2022–May 2023 ($963.24), plus the discounted future payments from June 2023 through the end of the Agreement's term ($72,515.22), plus the repossession cost of the Equipment ($500.00), minus the proceeds from the sale of the Equipment ($4,250.00). (*Id.* ¶ 10.)

that, if it disputed U.S. Bank's claims, it could still participate in the proceedings despite its nonappearance to date and the clerk's entry of default. (*Id.*)

U.S. Bank complied with the court's order and submitted a supplemental brief with supporting evidence on February 2, 2024. (*See generally* Suppl. Br. [ECF No. 11].) In that supplemental filing, U.S. Bank withdrew its request for attorneys' fees (*id.* at 3 n.1), but it continues to seek $77,755.36 in damages, prejudgment interest accumulating at a rate of $25.56 per day from July 19, 2023, and attorneys' costs of $570.00. (*See* Suppl. Decl. Damages ¶¶ 23–24; Aff. Ronald S. Canter ¶ 8 [ECF No. 11-7].)

## II.    STANDARD OF REVIEW

The Fourth Circuit has "repeatedly expressed a strong preference that . . . claims . . . be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010); *see also United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]he clear policy of the Rules is to encourage dispositions of claims on their merits . . . ."). But when a "properly served defendant . . . fails to plead or otherwise defend against the allegations in [a] complaint," the court is authorized to enter default judgment against that defendant under Federal Rule of Civil Procedure 55(b)(2). *Reynolds Innovations, Inc. v. E-CigaretteDirect, LLC*, 851 F. Supp. 2d 961, 962 (M.D.N.C. 2012). "To obtain a default judgment, a party must first seek an entry of default under Federal Rule of Civil Procedure 55(a)." *Pelyn Tr. v. Fair Exch. Tr.*, No. 3:08-cv-287, 2009 WL 2912521, at *1 (W.D.N.C. Sept. 3, 2009) (internal quotation omitted). After the clerk enters default, the court must determine if the complaint sets forth a legitimate cause of action, accepting the well-pleaded allegations of fact as true. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Claims for damages, however, are not simply

accepted as true. *See Lopez v. XTEL Constr. Grp., LLC*, No. Civ. PWG-08-1579, 2011 WL

6330053, at *4 (D. Md. Dec. 16, 2011). Instead, the plaintiff must establish its damages by way

of an evidentiary hearing or submitting supporting evidence to the court. *Id.* (collecting cases).

At bottom, the award of a default judgment is subject to the district court's discretion; it is not

a matter of right. *See, e.g.*, *Leighton v. Homesite Ins. Co. of the Midwest*, 580 F.Supp.3d 330, 332

(E.D. Va. 2022).

### III.   ANALYSIS

Default judgment is appropriate on U.S. Bank's breach of contract claim. U.S. Bank

did not move for default judgment on its detinue claim, so the court considers that claim

waived. *See J&J Sports Prods., Inc. v. Lawson*, No. 3:17-cv-02939, 2019 WL 2191807, at *2 n.1

(D.S.C. May 21, 2019).

Before awarding default judgment, the court must ensure that U.S. Bank stated a breach

of contract claim—accepting as true the well-pleaded factual allegations in the complaint—

because the clerk's entry of default does not establish liability. *See Ryan*, 253 F.3d at 780; *see also*

10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2688.1 (4th

ed. 2023) ("Liability is not deemed established simply because of the default . . . ."). In doing

so, the court initially determines what law applies to U.S. Bank's breach of contract claim.

Because this is a diversity action, the court applies the choice-of-law rules of the state in which

it sits—Virginia. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 623–24 (4th Cir. 1999)

(citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). For a breach of

contract, Virginia law gives effect to the choice-of-law clause in the relevant contract, except

in unusual circumstances. *Id.* at 624. The Agreement unambiguously states that it "will be

governed by and construed in accordance with Minnesota law" (Agreement ¶ 12), and the

parties do not point to any unusual circumstances related to this provision. Therefore,

Minnesota law applies.[2]

"Under Minnesota law, the elements of a breach-of-contract claim are: '(1) formation

of a contract, (2) performance by [the] plaintiff of any conditions precedent to his right to

demand performance by the defendant, and (3) breach of the contract by [the] defendant.'"

*Placzek v. Mayo Clinic*, 18 F.4th 1010, 1016 (8th Cir. 2021) (quoting *Lyon Fin. Servs., Inc. v. Ill.*

*Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014)). Each of these elements is satisfied in

the present matter. First, the Agreement is a validly formed contract that U.S. Bank and

Carriers entered into in April 2022. (Compl. ¶ 5; *see* Agreement at 1.) Second, U.S. Bank

performed its condition precedent to its right to demand performance by financing Carriers's

purchase of the Equipment. (Compl. ¶ 8; *see* Agreement at 1.) Third, Carriers breached the

contract by failing to make the monthly payments to U.S. Bank as they came due. (Compl.

¶ 10; *see* Agreement ¶ 6.) Accordingly, the complaint states a claim for breach of contract

against Carriers.

Despite the strong preference to resolve claims on the merits, the court can enter

default judgment when a defendant fails to plead or otherwise defend in accordance with the

---

[2] In its supplemental brief, U.S. Bank lists the elements for a breach-of-contract claim under Virginia law but does not otherwise address the appropriate choice of law. (*See* Suppl. Br. at 2.) Although this was error, the outcome of U.S. Bank's default-judgment motion would remain the same if Virginia law applied. The complaint states a breach-of-contract claim under Virginia law because the Agreement is a valid contract, Carriers breached the Agreement by not meeting its payment obligations, and U.S. Bank was damaged by the breach because it did not receive the money that it was owed. *See Dewberry Eng'rs Inc. v. Dewberry Grp., Inc.*, 77 F.4th 265, 277 (4th Cir. 2023) (citing *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (Va. 2016)) (stating the elements for a breach of contract under Virginia law). Additionally, Virginia law allows for the 12% prejudgment interest that U.S. Bank requests, *see* Va. Code Ann. § 6.2-303, which is the other pertinent issue governed by state law.

Federal Rules of Civil Procedure. *See Moradi*, 673 F.2d at 727. Here, the requirements for a

default judgment are satisfied because Carriers was properly served but has not appeared or

defended against this lawsuit in any way, the clerk entered default, and the complaint states a

claim. *See Ryan*, 253 F.3d at 780; *Pelyn Tr.*, 2009 WL 2912521, at *1. As such, the court will

grant U.S. Bank's motion for default judgment.

Next, the court must determine the damages that U.S. Bank is entitled to recover. *See*

*Lopez*, 2011 WL 6330053, at *4. "A default judgment must not differ in kind from, or exceed

in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). U.S. Bank requests the

following damages in its complaint for Carriers's breach of contract: (1) $81,505.36 in

damages; (2) "contractual pre-judgment interest at 12 percent *per annum* from January 15, 2023

to judgment"; (3) post-judgment interest; (4) costs; and (5) attorneys' fees. (Compl. at 4.) In

its motion for default judgment, however, U.S. Bank reduced the relief that it seeks in the

following ways: it now asks for $77,755.36 in damages,[3] requests prejudgment interest from

only July 19, 2023, and withdrew its claim for attorneys' fees. (*See* Mot. Default J. at 3; Suppl.

Br. at 3 n.1). The court will consider U.S. Bank's requests, as modified, in turn.

As to the $77,755.36 in damages, the court will grant that request. U.S. Bank provided

a detailed payment history of Carriers's account and a loan officer's sworn declaration in

support of the damages amount. Those documents conclusively establish that the damages

equal: (1) Carriers's five missed monthly payments before U.S. Bank declared it in default and

---

[3] This amount differs from the $81,505.36 in damages requested in the complaint because it accounts for the $500.00 expense to repossess the Equipment and the $4,250.00 in proceeds from the Equipment's sale, neither of which had occurred when U.S. Bank filed the complaint in July 2023. (*See* ECF Nos. 11-4 to 11-6 (showing that the repossession and sale occurred in September and October 2023, respectively).)

accelerated the future payments; plus (2) late fees; plus (3) the accelerated future payments, discounted at a rate of 2%; plus (4) the expense for U.S. Bank to repossess the Equipment; minus (5) the proceeds from the sale of the Equipment. (Detailed Pay History at 1–2; Suppl. Decl. Damages ¶ 23.) That calculation aligns with the Agreement's payment and remedy terms (Agreement ¶¶ 2, 6), so the requested damages are appropriate.

The court will also grant U.S. Bank's request for 12% prejudgment interest from July 19, 2023, to the date of judgment. "State law governs the award of prejudgment interest in a diversity case." *See Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 311 (4th Cir. 2020) (cleaned up). "The prevailing approach under Minnesota law in a contract dispute like this one . . . is that Minn. Stat. § 334.01 governs prejudgment interest." *AB Tours LLC v. ABC Bus Leasing, Inc.*, No. 21-cv-1376, 2022 WL 3701404, at *4 (D. Minn. July 28, 2022). Minn. Stat. § 334.01 states that certain interest rates apply to legal indebtedness, but those rates can be modified—and exceeded—by rates set forth in a written contract that provides credit to an organization. *See* Minn. Stat. §§ 334.01, 334.022 ("Notwithstanding any law to the contrary, no limitation on the rate or amount of interest . . . applies to an extension of credit to an organization . . . .") Under the Agreement, U.S. Bank extended credit to B.S. Carriers, LLC, which is an 'organization.' *Id.* § 334.022 ("'Organization' means a . . . limited liability company . . . .") And the Agreement specifies that U.S. Bank is entitled to recover interest on any unpaid amount at the rate of 12% per year. (Suppl. Decl. Damages ¶ 17; Agreement ¶ 6.) It is therefore appropriate to award U.S. Bank its requested, and bargained for, prejudgment interest in order to "compensate [it] for the loss of the use of money occasioned by" Carriers's

non-payment. *In re RFC & ResCap Liquidating Tr. Litig.*, Nos. 13-cv-3451 & 14-cv-1716, 2019 WL 1237166, at *3 (D. Minn. Mar. 18, 2019) (cleaned up).

Next, U.S. Bank must receive post-judgment interest. "[F]ederal law mandates the awarding of post-judgment interest." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (en banc) (citing 28 U.S.C. § 1961); *see also Contitech USA, Inc. v. McLaughlin Freight Servs., Inc.*, No. 23-1379, 2024 WL 273899, at *4 (8th Cir. Jan. 25, 2024) (stating that post-judgment interest is mandatory even when it is not requested). In a diversity action, the post-judgment interest rate is set by 28 U.S.C. § 1961. *See Vandevender v. Blue Ridge of Raleigh, LLC*, 756 F. App'x 230, 233 (4th Cir. 2018). Accordingly, U.S. Bank is entitled to post-judgment interest as calculated under 28 U.S.C. § 1961. *See, e.g., ExxonMobil Oil Corp. v. Black Stone Petroleum Inc.*, 221 F. Supp. 3d 755, 769 (E.D. Va. 2016).

Finally, the court will award U.S. Bank its attorneys' costs. Carriers is responsible for any costs that U.S. Bank incurs to enforce its rights under the Agreement. (*See* Agreement ¶ 6); Fed. R. Civ. P. 54(d)(1). U.S. Bank's counsel filed an affidavit with the court detailing his costs for mailing demand letters to Carriers, filing the lawsuit, and serving Carriers. (Aff. Ronald S. Canter ¶ 8.) Those costs total $566.00,[4] which U.S. Bank will receive as the prevailing party. *See* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party."); *see also Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 766 (4th Cir. 2003) ("Rule 54(d)(1) creates a presumption that costs are to be awarded to the prevailing party . . . .")

---

[4] In his affidavit, U.S. Bank's attorney mistakenly lists the filing fee as $406.00. (Aff. Ronald S. Canter ¶ 8.) As reflected on the payment confirmation that he provides, however, the filing fee is $402.00. (ECF No. 11-8 at 3). Based on this minor adjustment, the total costs are $566.00, not $570.00 as stated in his affidavit.

## IV.    CONCLUSION

For these reasons, U.S. Bank's motion for default judgment (ECF No. 9), as modified

by its supplemental filing (ECF No. 11), will be granted.

The clerk is directed to forward a copy of this Memorandum Opinion and the

accompanying Order to the parties and all counsel of record.

**ENTERED** this 12th day of February, 2024.

*/s/ Thomas T. Cullen*

HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE